574 March 27, 2024 No. 185

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

Terrial JACKSON,
*Plaintiff-Appellant,*

*v.*

KA-3 ASSOCIATES, LLC,
an Oregon limited liability company,
and Kinsel Ameri Properties, INC.,
an Oregon corporation, dba WPL Associates,
*Defendants-Respondents.*

Multnomah County Circuit Court
20CV18057; A180328

Thomas M. Christ, Judge pro tempore.

Argued and submitted February 8, 2024.

Willard E. Merkel argued the cause for appellant. Also on the opening brief was Merkel & Associates. Also on the reply brief was Merkel & Conner.

A. Elizabeth Esfeld argued the cause for respondents. Also on the brief was Betts, Patterson & Minds, P.S.

Before Tookey, Presiding Judge, Egan, Judge, and Kamins, Judge.

EGAN, J.

Affirmed.

**EGAN, J.**

Plaintiff seeks to hold defendant, his landlord, liable for injuries he allegedly sustained when a "light fixture"[1] fell on him in a common covered walkway of his residential apartment complex. He brought claims against defendant in negligence and under the Oregon Residential Landlord and Tenant Act (ORLTA), ORS 90.320(1)(e), (f), and (h). He appeals from a judgment for defendant after the trial court granted defendant's motion for summary judgment on both claims. Reviewing the trial court's ruling in the light most favorable to plaintiff to determine whether the trial court correctly determined on the summary judgment record that there were no genuine issues of material fact and that defendant was entitled to judgment as a matter of law, ORCP 47 C, *Jones v. General Motors Corp.*, 325 Or 404, 939 P2d 608 (1997), we conclude that the trial court did not err in granting defendant's motion for summary judgment on plaintiff's claims.

In his first assignment of error, plaintiff asserts that the trial court erred in granting defendant's motion for summary judgment on his claim under ORS 90.320. ORS 90.320 sets forth a landlord's obligation to "maintain the dwelling unit in a habitable condition":

"(1)  A landlord shall at all times during the tenancy maintain the dwelling unit in a habitable condition. For purposes of this section, a dwelling unit shall be considered unhabitable if it substantially lacks:

"* * * * *

"(e)  Electrical lighting with wiring and electrical equipment that conform to applicable law at the time of installation and is maintained in good working order;

"(f)  Buildings, grounds and appurtenances at the time of the commencement of the rental agreement in every part safe for normal and reasonably foreseeable uses, clean, sanitary and free from all accumulations of debris, filth, rubbish, garbage, rodents and vermin, and all areas under control of the landlord kept in every part safe for normal

---

[1] Plaintiff's complaints alleged that a "light fixture" fell on him, and the briefs on appeal continue that description, although it is undisputed by plaintiff that it was the light fixture's *plastic cover* that fell, and not the fixture itself. It is further undisputed that the light fixture remained functional without its cover.

and reasonably foreseeable uses, clean, sanitary and free from all accumulations of debris, filth, rubbish, garbage, rodents and vermin;

"(g)  *****

"(h)  Floors, walls, ceilings, stairways and railings maintained in good repair[.]"

ORS 90.100(13) defines a "dwelling unit" as

"a structure or the part of a structure that is used as a home, residence or sleeping place by one person who maintains a household or by two or more persons who maintain a common household."

In contrast, as relevant, ORS 90.100(36) defines "premises" as:

"(a)  A dwelling unit and the structure of which it is a part and facilities and appurtenances therein;

"(b)  Grounds, areas and facilities held out for the use of tenants generally or the use of which is promised to the tenant[.]"

As we understand the definitions of "dwelling unit" and "premises," although a dwelling unit is *a part* of the premises, the dwelling unit is separate from the facilities and appurtenances in which the dwelling unit is located and the grounds, areas and facilities held out for use of tenants generally. In other words, a dwelling unit does not include the common areas of an apartment complex.

The habitability requirements of ORS 90.320 relate specifically to the "dwelling unit." The record on summary judgment requires the finding that plaintiff's injury occurred in a common area of the apartment complex and not in a "dwelling unit," as defined in ORS 90.100(13). In light of that, the trial court concluded that plaintiff had not stated a claim under ORS 90.320.[2]

The cases on which plaintiff relies in support of his contention that outside structures in a common area

---

[2] The trial court further granted defendant summary judgment on the basis that, even if the hallway in which the injury had occurred was part of the dwelling unit, on the record on summary judgment, no reasonable factfinder could find that the falling of the light fixture rendered the dwelling unit uninhabitable.

are part of a dwelling unit are distinguishable. *Humbert v. Sellars*, 300 Or 113, 117-18, 708 P2d 344 (1985), involved a wet patio within the leased premises. *Appleberry v. Berry*, 98 Or App 398, 400-01, 779 P2d 205, *rev den*, 308 Or 608 (1989), involved a surface adjacent to a swimming pool in the backyard of a rented single-family home. Those cases did not involve common areas, but rather the exterior portions of rented dwelling units. Here, plaintiff's injury did not occur in the dwelling unit, and, for that reason, the trial court did not err in granting defendant's motion for summary judgment on plaintiff's claim under the ORLTA. We therefore reject plaintiff's first assignment of error.

In his second assignment, plaintiff asserts that the trial court erred in granting defendant's motion for summary judgment on his negligence claim. Plaintiff's negligence claim alleged that defendant breached its duty to plaintiff in five ways: (1) in failing to maintain the common areas in a reasonably safe condition for plaintiff, an invitee;[3] (2) in failing to exercise reasonable care to discover the conditions that created an unreasonable risk of harm to plaintiff; (3) in failing to exercise reasonable skill and care to eliminate the hazard caused by the falling light fixture; (4) in failing to warn plaintiff of the risk of the falling light fixture; (5) in failing to block off or barricade the area around the falling light fixture.

On summary judgment, plaintiff narrowed his claim to the contention that defendant was negligent in failing to inspect and maintain the light fixture. The record on summary judgment includes an affidavit by plaintiff stating that, from a height of 10 to 12 feet, the "light fixture" fell on his head and then fell to the ground, where it shattered. Plaintiff stated in his affidavit that "the plastic shards I observed suggested that the fixture was weathered, brittle, and easily broken."[4] The record on summary judgment

---

[3] Plaintiff characterizes his tenant status as that of an "invitee," and defendant does not challenge the characterization. We have no reason in this case to question that characterization, and do not make an independent determination of his status.

[4] Plaintiff stated further in his affidavit that "there were no persons, including children, in the immediate area, and I did not detect any vibrations or disturbances that one would expect might affect the light fixture or cause it to fall. The weather was calm without any significant breeze."

also includes evidence that, at the time of the incident, children were running on the stairs at a level above the light fixture, and that, 10 days after the incident, defendant's maintenance person found a broken screw near the fixture. The record on summary judgment includes 700 pages documenting defendant's repairs of light fixtures and various other elements of the premises; however, none of those records documents regular inspections of the light fixtures by defendant or indicates whether defendant conducted regular inspections of light fixtures.

At the hearing on defendant's summary judgment motion, plaintiff's counsel argued that defendant had a duty to plaintiff as an invitee and an obligation to maintain and inspect the premises so as to protect plaintiff against an unreasonable risk of harm. *See Woolston v. Wells*, 297 Or 548, 557-58, 687 P2d 144 (1984) (possessor of premises must exercise due care to discover conditions on the premises that create an unreasonable risk of harm to invitees or warn them of the risk so as to enable them to avoid the harm). A business owner's duty to invitees applies to "dangers of which he knows or in the exercise of reasonable care should have known." *Mickel v. Haines Enterprises, Inc.*, 240 Or 369, 371-72, 400 P2d 518 (1965). Plaintiff argued that the broken screw found 10 days after the accident suggests a cause of the accident and also suggests "a failure to perform an inspection, much less to find something and then remedy it." Plaintiff argued that it was for a jury to determine whether it was more probable than not that defendant did or, perhaps, did not, exercise the care required of a premises owner to its invitee. Defendant emphasized the lack of evidence of causation, responding that it was pure speculation that the discovered broken screw or defendant's alleged negligence had anything to do with the fall of the plastic cover.

Apart from the possible connection between the incident, the discovered screw, and the condition of the plastic cover, plaintiff acknowledged an absence of evidence as to the exact reason the plastic cover fell. He argued, however, that a light fixture cover falling is something that does not ordinarily happen in the absence of negligence—specifically, as plaintiff argued, the absence of reasonable care in

inspecting and maintaining the light fixture. Thus, plaintiff argued, the case is one that is appropriate for application of the doctrine of *res ipsa loquitor*.

The trial court did not accept plaintiff's arguments, noting the lack of evidence in support of plaintiff's theory of negligence as to the cause of the fall—the absence of inspections—or causation, *i.e.*, whether inspections might have prevented the fixture cover from falling. In other words, the trial court was of the view that the summary judgment record did not include evidence from which the finder of fact might determine the existence or nonexistence of any inspection program and its possible connection to the accident.

On appeal, plaintiff does not challenge the trial court's determinations on the absence of evidence on the issues of maintenance or the cause of the plastic cover falling. But he asserts that he is entitled to an inference of negligence under the doctrine of *res ipsa loquitor*, because "the injury is of a kind which ordinarily does not occur in the absence of someone's negligence." *Watzig v. Tobin*, 292 Or 645, 648, 642 P2d 651 (1982) ("In essence, the rule that 'the thing speaks for itself,' *res ipsa loquitur*, is a rule of circumstantial evidence that allows an inference of negligence to be drawn if the accident is of a kind which ordinarily would not have occurred in the absence of the defendant's negligence, even though it is impossible to determine the specific way in which the defendant was negligent. *Kaufman v. Fisher*, 230 Or 626, 635, 371 P2d 948 (1962)."); *see also Hagler v. Coastal Farm Holdings, Inc.*, 354 Or 132, 146, 309 P3d 1073 (2013) (same) (quoting *Watzig*, 292 Or at 648). Plaintiff continues to focus on the alleged failure to inspect and contends that, in the absence of a record of inspection of the particular light fixture, there could be no discovery by defendant of the risk of injury and no elimination of it, and that a jury could find that the accident probably stemmed from a failure to inspect.

Defendant responds that plaintiff's contention of *res ipsa loquitur* is mere "speculation." We understand defendant's argument to be that the record on summary judgment of either negligence, causation, or *res ipsa loquitor* is underdeveloped. As noted, plaintiff's theory of negligence,

as narrowed on summary judgment, was that defendant breached a duty of care to plaintiff as an invitee in failing to inspect and maintain the light fixture. Plaintiff correctly states that the possessor of land has a duty to "'make their property reasonably safe for their invitees.'" *Hagler*, 354 Or at 140-41 (quoting *Hughes v. Wilson*, 345 Or 491, 497, 199 P3d 305 (2008)). The duty to make the premises reasonably safe "requires possessors of land to exercise due care to discover conditions on the premises that create an unreasonable risk of harm to invitees or warn them of the risk so as to enable them to avoid the harm." *Hagler*, 354 Or at 141 (citing *Woolston*, 297 Or at 557-58).

Thus, to survive a motion for summary judgment in negligence for breach of a duty of care to plaintiff as an invitee based on defendant's failure to inspect and maintain the light fixture, plaintiff was required to provide evidence that defendant (1) failed to inspect and maintain the light fixture *and* (2) that that failure was the cause of plaintiff's injury. Plaintiff asserts that defendant's failure to produce a report showing regular inspections of the involved light fixture was sufficient to allow an inference that there were no regular inspections. At oral argument, defendant's counsel acknowledged that defendant had not deposed apartment staff about inspections. But as defendant also argued, correctly, the burden of proof was on plaintiff, not defendant, to present evidence to withstand summary judgment. *See Brant v. Tri-Met*, 230 Or App 97, 104, 213 P3d 869 (2009) (to survive a motion for summary judgment, the party with the burden of proving a claim must present evidence that gives the factfinder a basis "other than sheer speculation" to conclude that the elements of the claim have been met).

Additionally, as defendant's counsel noted at oral argument and as plaintiff acknowledged, the record on summary judgment does not include any evidence of causation—*i.e.*, whether the asserted failure to inspect or maintain the light fixture had any connection to the reason the plastic cover fell—which, for example, might have been obtained through a deposition of the person who repaired the fixture or an affidavit under ORCP 47 E attesting that an expert could provide evidence of causation or the absence

of causation.[5] As the trial court found, there is no such evidence in this record.

In the absence of evidence of negligence or the exact cause of an accident, a factfinder can infer negligence and causation under *res ipsa loquitor*, a rule of circumstantial evidence, if the "accident is of a kind which ordinarily would not have occurred in the absence of the defendant's negligence, even though it is impossible to determine the specific way in which the defendant was negligent." *Hagler*, 354 Or at 146. The plaintiff bears the burden of submitting evidence that the plaintiff's injury is of the sort that, more likely than not, was caused by negligence on the part of the defendant and therefore is entitled to an inference of negligence under *res ipsa loquitor. Id*. Whether a reasonable juror could draw such an inference is an issue of law to be determined by the court. *Fieux v. Cardiovascular & Thoracic Clinic, P.C.*, 159 Or App 637, 640, 978 P2d 429, *rev den*, 329 Or 318 (1999).

In *Ritchie v. Thomas et al.*, 190 Or 95, 114, 224 P2d 543 (1950), the court explained that *res ipsa loquitor* is a rule of evidence that allows an inference of negligence, rather than a presumption, under certain limited circumstances:

"[T]he fact of injury alone does not raise an inference of negligence. An inference of negligence may arise only when injury is caused by an instrumentality which is under the control and management of the defendant, and when the accident is such as, in the ordinary course of events does not happen, if those who have the management use ordinary care."

In more recent times, in *McKee Electric Co. v. Carson Oil Co.*, 301 Or 339, 353, 723 P2d 288 (1986), the court considered whether the doctrine of *res ipsa loquitor* applied to allow the jury to consider the plaintiff's negligence claim for damages resulting from the explosion of a gasoline tank. In upholding the trial court's ruling instructing the jury on *res ipsa loquitor*, the court explained that the doctrine may allow an inference both as to negligence and causation. *Id*. The court said:

---

[5] We do not mean to suggest that an expert's testimony is *required* for the court to make a *res ipsa loquitur* determination. *See McKee Electric Co. v. Carson Oil Co.*, 301 Or 339, 352-53, 723 P2d 288 (1986) (holding that expert testimony was not an essential part of the plaintiff's *res ipsa loquitor* negligence claim).

"We believe that the key question to be asked by a court is that which we recently approved:

   "'Could it have been reasonably found by the jury that the accident which occurred in this case is of a kind which more probably than not would not have occurred in the absence of negligence on the part of the defendant?'"

*Id*. (quoting *Watzig*, 292 Or at 649). That is the key question here.

Because plaintiff has limited his allegation of negligence to the failure to inspect and maintain the light fixture, *res ipsa loquitor* is limited to establishment of those particular specifications of negligence. *Brannon v. Wood*, 251 Or 349, 356-57, 444 P2d 558 (1968) (where only specific acts of negligence are charged *res ipsa loquitur* can be used only to establish the particular negligent acts alleged); *Boyd v. Portland Electric Co.*, 41 Or 336, 344, 68 P 810 (1902) ("[I]f the plaintiff chooses to narrow and circumscribe his cause of action, and specify and particularize the cause of the parting of the wires, and its consequent suspension upon the street, he thereby limits the inquiry to the cause designated, and none other is pertinent or can be entertained at the trial; but this does not destroy the utility or applicability of the maxim *res ipsa loquitur*, if the facts proven speak of the negligence charged."). The focus is thus on whether the record on summary judgment includes evidence from which it could be found that it is more probable than not that the falling of the light fixture cover was an accident of a kind which ordinarily would not occur in the absence of negligence in failing to inspect or maintain the light fixture.

As we have noted, the trial court found that plaintiff had not presented evidence of a failure to inspect and, further, that, even assuming there was a failure to inspect and maintain, there was no evidence that the failure to inspect or maintain would have caused the light fixture cover to fall. We need not address the trial court's conclusion as to the failure to inspect and maintain, because we agree with the trial court's assessment of the record on causation. The plaintiff bears the burden of submitting evidence that the plaintiff's injury is of the sort that, more likely than not, was caused by negligence on the part of the defendant and

therefore is entitled to an inference of negligence under *res ipsa loquitor*. *Hagler*, 354 Or at 146. There is no evidence in the record on summary judgment from which an inference can be drawn that, even assuming negligence in the failure to inspect or maintain the light fixture, that negligence caused the light fixture's cover to fall. Without it, the record does not permit the finding that it is more probable than not that the falling of the light fixture cover was an accident of a kind which ordinarily would not have occurred in the absence of negligence in failing to inspect or maintain the light fixture. We therefore conclude that the trial court did not err in granting defendant's motion for summary judgment.

Affirmed.